OPINION OF THE COURT
Richard Lee Price, J.
Petitioner moves by writ of habeas corpus for an order vacating his parole warrant and releasing him from the custody of Department of Corrections and Community Supervision (DOCCS). By petition submitted April 25, 2012, petitioner asserts that he is being illegally detained because DOCCS deprived him of his right to be present at the preliminary hearing in violation of Executive Law § 259-i (3) (c) (i) and (iv), as well as the Due Process Clause of the Fourteenth Amendment of the United States Constitution and New York Constitution, article I, § 6. By decision dated June 22, 2012, this court sustained petitioner’s writ. This expands that decision.
Procedural History
On June 6, 2010, judgment was entered against petitioner in Supreme Court, New York County, upon his conviction of attempted criminal possession of a weapon in the second degree. Defendant was sentenced to a determinate term of two years’ imprisonment and a period of D/2 years of postrelease supervision.
On April 22, 2011, petitioner was conditionally released and scheduled to be supervised by DOCCS through October 22, 2012. In connection with his conditional release, petitioner signed a document entitled “Certificate of Release to Parole Supervision” (see respondents’ exhibit A). By signing this document, petitioner agreed to comply with the terms and conditions set forth in it, which included the following:
“CONDITIONS OF RELEASE
“2. I will make office and/or written reports as directed ....
“4.1 will permit my Parole Officer to visit me at my *629 residence and/or place of employment and I will permit the search and inspection of my person, residence and property. I will discuss any proposed changes in my residence, employment or program status with my Parole Officer. I understand that I have an immediate and continuing duty to notify my Parole Officer of any changes in my residence, employment or program status when circumstances beyond my control make prior discussion impossible.”
DOCCS contends that on August 9, 2011, petitioner changed his approved residence without notifying or receiving approval from his parole officer. DOCCS further asserts that on August 10, 2011 and August 12, 2011, petitioner failed to make an office report to his parole officer (see respondents’ exhibit E).
Based on these circumstances, DOCCS issued a violation of release report charging petitioner with violating the above-stated conditions of parole on August 26, 2011. In conjunction with that report, DOCCS issued parole warrant No. 633181 against petitioner, also on August 26, 2011.
On February 5, 2012, the warrant was executed, and lodged, against petitioner (see respondents’ exhibit C). The next day, on February 6, 2012, DOCCS served petitioner with a copy of the violation of release report (see respondents’ exhibit E) and notice of violation (see respondents’ exhibit F). Petitioner elected to have a preliminary parole revocation hearing, which was scheduled for February 10, 2012.
On February 10, 2012, petitioner did not appear at the preliminary hearing. Notwithstanding his nonappearance, DOCCS Parole Hearing Officer Sharon Burnett (PHO Burnett) conducted the hearing in absentia. PHO Burnett found probable cause existed that petitioner violated a condition of his release to parole supervision in an important respect (see respondents’ exhibit G).
Petitioner, citing his Muslim status, alleged that he refused production at the preliminary hearing in observance of Friday rituals. Consequently, he argues, that the hearing in absentia unconstitutionally deprived him of his right to due process. By order dated May 14, 2012, this court ordered that an evidentiary hearing be conducted to resolve several factual issues.
The Hearing
On June 5, 2012, this court conducted an evidentiary hearing to establish the basis for petitioner’s failure to appear at the *630 preliminary hearing. The Attorney General’s Office, representing DOCCS, called one witness: Parole Officer Yvonne King (PO King). New York City Department of Correction Officer Theron Travis (CO Travis) testified on petitioner’s behalf, as did the petitioner. This court finds the witnesses’ testimony credible to the extent indicated herein. Several issues of fact concerning the preliminary hearing, however, were raised.
PO King, a parole officer for five years assigned to the Brooklyn Two command, testified that she was assigned to supervise the petitioner on parole from his release in April 2011, and had done so until his arrest in February 2012. She further testified that during that time, she met with him on several occasions during office reports and home visits, and had regular telephone conversations with him. At no time during this period did she become aware that petitioner was an affiliated Muslim (hearing tr at 6-8). Moreover, PO King could not recall seeing his inmate identification card, let alone whether it indicated he was a Muslim (hearing tr at 23).
On February 8, 2012, PO King visited petitioner on Rikers Island and served him with an amended violation of release report and notice of violation, referred to as a 9011, which petitioner signed. The 9011 indicated that petitioner’s preliminary hearing was scheduled for February, 10, 2012, which was a Friday. PO King testified that after serving the petitioner, she stated that she “would see him Friday at the prelim.” At no time did he mention he was a Muslim, that he had a religious observance for that day, or that such observance precluded him from attending (hearing tr at 8-13).
On February 10, 2012, petitioner did not appear at the preliminary hearing. PO King testified that she received an “Undelivered Defendant” document from the New York City Department of Correction (NYCDOC) indicating that petitioner had refused to attend (see respondents’ exhibit H). That form indicated that petitioner had indeed “refused to go” to the preliminary hearing. It did not, however, indicate that he had done so because of religious observance (hearing tr at 14-15). Notably, neither PO King nor PHO Burnett contacted agents of DOCCS, NYCDOC, or Otis Bantum Correctional Center (OBCC), the facility where petitioner was being detained, to determine whether the basis for petitioner’s refusal to attend was indeed religious observance (hearing tr at 21-22). Instead, PHO Burnett simply conducted the hearing.
CO Travis, a court expediter officer assigned to the OBCC facility on Rikers Island, testified on behalf of the petitioner. He *631 testified that as a court expediter, it was his responsibility to prepare an undelivered defendant form whenever an inmate refuses to attend a court proceeding (hearing tr at 29). CO Travis stated that while he did not specifically recall interacting with the petitioner on February 10, 2012, he acknowledged completing an undelivered defendant form that petitioner signed. And although he had no memory of whether petitioner cited religious observance as the reason for refusing to attend the preliminary hearing, CO Travis surmised that “he had to have been a Muslim” because that day was a Friday and no disciplinary infraction for refusing was issued (hearing tr at 30-32). Notably, though, he neglected to indicate as much on the undelivered defendant form (hearing tr at 35).
Petitioner testified that on Friday, February 10, 2012, correction officers awoke him for the preliminary hearing. After being taken to intake, he told CO Travis that he was refusing to attend because of his Muslim observance, and displayed his Muslim inmate identification card. Petitioner acknowledged signing the undelivered defendant form as having refused. According to the petitioner, it was some time later that he learned the preliminary hearing had been conducted in his absence for having refused to attend. In a subsequent conversation with CO Travis, petitioner recalls telling him “it [the undelivered defendant form] said refused to go instead of saying refused for religious reasons, and he told me ‘it doesn’t matter, you can’t refuse unless you’re Muslim’ . . . and I never received a ticket [disciplinary infraction]” (hearing tr at 41-42).
In their oral argument, respondents conceded that conducting the hearing in absentia was improper, but claimed that the appropriate remedy was to afford petitioner another preliminary hearing. In their posthearing supplemental brief, oddly, they argue that DOCCS was under no duty to adjourn the hearing, and properly conducted the preliminary hearing in absentia. Petitioner argued that it was indeed improper to have conducted it, and that the only viable remedy is vacatur of the warrant and restoration to parole.
Discussion
A. The Violation
Executive Law § 259-i (3) (c) (i) provides: “Within fifteen days after the warrant for retaking and temporary detention has been executed . . . the board of parole shall afford the alleged presumptive . . . parole . . . violator a preliminary revocation *632 hearing before a hearing officer designated by the board of parole.”
Executive Law § 259-i (3) (c) (iii) provides that the alleged violator “shall have the right to appear and speak in his or her own behalf.” While an alleged parole violator has the right to refuse to attend his or her preliminary hearing, a hearing officer is entitled to conduct it in absentia unless such absence is for a “legitimate reason! ]” (see Matter of Emmick v Enders, 107 AD2d 1066, 1067 [4th Dept 1985]). Courts have consistently held that religious observance is indeed a legitimate reason (see e.g. People ex rel. Moore v Warden of Rikers Is. Correctional Facility, 36 AD3d 494 [1st Dept 2007] [adjournment was permissible when the hearing was scheduled for petitioner’s religious holiday]).
Here, petitioner’s preliminary hearing was scheduled for a Friday, which conflicted with his Muslim religious observance. Notwithstanding respondents’ posthearing supplemental brief claim that DOCCS was under no duty to adjourn the hearing, during their oral argument they conceded that conducting the hearing in absentia was indeed improper.
Because the preliminary hearing was scheduled for a Friday, there was at least a significant likelihood that the basis for petitioner’s refusal was his Muslim observance. As it turns out, that was precisely the reason. PO King and PHO Burnett were unaware of it, however, because of CO Travis’ neglect to indicate it on the undelivered defendant form. Explaining such neglect, CO Travis testified as follows:
“MR. COONEY: [I]f he, according to your testimony, most likely refused to go to court because he was a Muslim on a Friday, why did you not write that down on the form?
“CO TRAVIS: Sometimes I get busy ... it could have been the time he actually told me that he didn’t want to go because he was Muslim, I might have been busy with a lot of courts ... a lot of things happen. Friday is a very busy day sometimes.
“MR. COONEY: Do you ever write down a reason— one of the reasons for refusing is because of religious reasons?
“CO TRAVIS: I do. I write sometimes they refused to go. Sometimes I write down Muslim services. Sometimes I write the Juma (ph) . . . I’m just writing, because I’m trying to keep working to produce *633 the inmates to court.
“MR. COONEY: So contrary to what you testified previously, it’s not common practice to write only ‘refused to go’ [not] denoting someone is refusing to go for Muslim observance?
“CO TRAVIS: That’s normal ... I could have did an error, didn’t write it that day. Like I said, I write hastily.
“MR. COONEY: I’m confused. What’s the normal, just saying ‘refused to go’ without saying for religious reasons or listing the religious reasons?
“CO TRAVIS: Normally, I list the religious reason
“MR. COONEY: Is that the normal procedure according to how you were trained, if you remember?
“CO TRAVIS: Well, it’s untaught practice. Nobody actually taught us how to follow that same procedure correctly.” (Hearing tr at 34-36.)
The significance of such testimony leads this court to the inescapable conclusion that it is apparently too burdensome to write two words (i.e., religious observance), perhaps three (i.e., Muslim religious observance), on a form the purpose of which was to document the reason for petitioner’s refusal to appear. Worse is that a veteran correction officer ostensibly views such failure nonchalantly. That he would then attempt to place responsibility for it on being busy or a lack of training is simply incredible.
CO Travis’ neglect aside, that PO King and PHO Burnett remained ignorant of the basis for petitioner’s refusal is incomprehensible, especially since it was Friday, the well-known day of Muslim observance. PO King made no effort to determine the reason petitioner refused, and other than inquiring of PO King as to the reason, PHO Burnett demonstrated no concern as well. A brief delay or short adjournment to investigate is all that was needed. Surely, that is simple enough. The fact that it was neither suggested nor considered is inexcusable.
As for respondents’ claim that NYCDOC Officer Travis’ failure to indicate the basis for petitioner’s refusal on the undelivered defendant form cannot be imputed to DOCCS Officers King and Burnett because they are separate, unrelated entities, such an argument is patently misguided. This has nothing to do with whether or not information shall be imputed to one another, or *634 whether each may serve as the other’s agent; it is about the careless disregard of providing vital information, the wanton failure to obtain it, and the unmitigated indifference to both.
B. Remedy
Having determined that petitioner’s right to attend his preliminary hearing was abrogated, the only issue is the required remedy. Petitioner argues that conducting the hearing in absentia was a due process violation requiring the warrant be vacated. Respondents, conversely, assert the violation was purely procedural and requires only a new preliminary hearing. To be sure, if the violation was indeed solely procedural, respondents would indeed be correct. Denying petitioner the right to be present at his own hearing when his absence was precipitated by religious observance, however, unequivocally violates the Fourteenth Amendment of the United States Constitution and article I, § 6 of the New York Constitution. To hold otherwise would be nonsensical, would render Executive Law § 259-i (3) (c) (i) meaningless, and more problematically, disregard the Court of Appeals (see People ex rel. McGee v Walters, 62 NY2d 317 [1984] [violation of a petitioner’s due process rights requires that the warrant be vacated and the petitioner restored to parole]; see also People ex rel. Rosenfeld v Sposato, 87 AD3d 665 [2d Dept 2011]).
Respondents’ reliance on People ex rel. Martinez v New York State Bd. of Parole (56 NY2d 588 [1982]) is erroneous. Martinez, however, involved irregularity in the statutory procedures, not a due process violation (Martinez at 590). To construe it as the respondents do, this court would need to engage in the conflated reasoning that equates procedural irregularities with a due process violation. Such a conclusion is simply untenable.
Moreover, respondents’ argument that their lack of bad faith entitles petitioner only to a new hearing is similarly meritless. Petitioner was incarcerated for a period in excess of four months on a parole violation warrant without being afforded an opportunity to attend his preliminary hearing precisely because of his decision to exercise religious observance. Arguing that providing petitioner with a hearing now ameliorates such unjustified deprivation is an anathema to our system of justice under any circumstances, let alone those under which respondents acted. Holding otherwise would result in sanctioning petitioner’s predicament of choosing between his right to due process and his right to the free exercise of religion.
*635 Conclusion
Petitioner was denied his due process right to attend the preliminary hearing regarding his alleged parole violation pursuant to Executive Law § 259-i (3) (c) (i) and (iv), as well as the Due Process Clause of the Fourteenth Amendment of the United States Constitution and New York Constitution, article I, § 6. Petitioner’s writ of habeas corpus is therefore sustained, and the warrant dismissed.